UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| United States of America, | Criminal No. 13-191 (ADM/FLN) |
|---|---|
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Nielsen Francis Ove, | |
| Defendant. | |

---

LeeAnn K. Bell, Assistant United States Attorney, for Plaintiff.
Manny K. Atwal, Assistant Federal Defender, for Defendant.

---

**THIS MATTER** came before the undersigned United States Magistrate Judge on August 14, 2013 on Defendant's motion to suppress the firearm found on his person and other evidence seized from his residence. (ECF No. 13). The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. At the hearing, the government offered testimony from Officer Andrew Johnson, who currently serves as an agent with the Minnesota River Valley Drug Task Force. Both parties submitted post-hearing briefing. ECF Nos. 27 and 30. For the reasons set forth below, the Court recommends Defendant's motion be **DENIED**.

## I. FINDINGS OF FACT

### A. Testimony of Agent Johnson

On March 6, 2013, Agent Johnson learned of an individual who had violated the conditions of his or her probation by using methamphetamine. ECF No. 22 at 7. The probationer was informed that he or she may not be penalized for the violation in exchange for intelligence that would assist the drug task force. *Id.* The probationer informed the officers that he or she purchased

1

methamphetamine from Defendant Ove within the last 72 hours. *Id.* at 8. The probationer gave the agents a host of other details about Ove, including that he (1) drove a 2002 or 2004 green Ford Explorer SUV with a white grenade sticker on the front quarter panel of the driver's side, (2) lived with his girlfriend in a trailer park in St. Peters, Minnesota, (3) carried a 9-millimeter semiautomatic pistol in his inside jacket pocket and (4) there was a secret compartment in his SUV where the passenger-side airbag would normally be located. *Id.* at 9.

Agent Johnson testified that he learned of Ove's reputation as a mid-large scale methamphetamine dealer sometime in 2011. *Id.* at 11. Based on his independent knowledge of Ove—combined with the information learned from the cooperating probationer—Agent Johnson issued an officer alert about Ove. *Id.* at 12. Before issuing the alert, Johnson learned that Ove's driver's license was revoked. *Id.* One hour after the alert was issued, a St. Peter's Police Department officer reported that he identified Ove's vehicle in the driveway of trailer number 89 at a local trailer park. *Id.* at 14. Agent Johnson and another agent drove to the trailer park and established observation of the trailer. Soon they observed a white male exit the trailer and enter a green SUV that matched the description given by the cooperating probationer. *Id.* Although the agents could not see the person's face, the build of the man matched that of Ove.

Agent Johnson and his partner then worked with local law enforcement to conduct an investigatory stop of the green SUV. *Id.* The SUV pulled over into a residential driveway in response to the law enforcement's show of authority. *Id.* The officers called Ove out of the car at gunpoint, positively identified him and placed him under arrest for driving without a license. *Id.* at 15. The officers also secured a 9 millimeter gun from the inside breast pocket of Ove's jacket. *Id.* at 16. Before Ove's vehicle was impounded, Agent Johnson and his partner approached the car to ensure no one else was in the vehicle. *Id.* at 17. Johnson also pushed the airbag compartment open

to see if there was a secret compartment as indicated by the cooperating probationer. Johnson found a black velvet bag inside that contained bullets, hyperdermic needles and what appeared to be baggies of methamphetamine. *Id.* at 18.

Agent Johnson and two other officers then returned to the trailer where they observed Ove earlier in the day to conduct a "knock and talk." *Id.* at 19. The officers confirmed that the woman inside was Ove's girlfriend and that Ove lived in the trailer. *Id.* The officers secured the trailer and then applied for a search warrant. *Id.* The warrant was granted later that afternoon and the trailer was searched and items were seized. *Id.* at 21.

## II. CONCLUSIONS OF LAW

### A. The investigatory stop of Ove's vehicle was legal.

Ove argues that the information given by the probationer was insufficient to support a legal stop of his vehicle. ECF No. 27 at 8. The Government contends that there was probable cause to stop Ove based on his license being revoked or, in the alternative, that the information from the cooperating probationer provided the officers with sufficient reasonable suspicion that Ove was involved in criminal activity. ECF No. 5-6. The Court agrees with the Government that the police had sufficient reasonable suspicion to stop the green SUV.

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers and effect, against unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop is a seizure and thus must be reasonable under the Fourth Amendment. *United States v. Hollins*, 685 F.3d 703, 705 (8th Cir. 2012). Reasonable traffic stops must be supported by "reasonable suspicion or probable cause." *United States v. Houston*, 548 F.3d 1151, 1153 (8th Cir. 2008). Reasonable suspicion is present when an officer is aware of objective facts which, taken together with rational inferences from those facts, support the suspicion that criminal activity is

afoot. *Id.*

In relying on information from informants, reasonable suspicion can be established through corroboration of certain facts, even from unproven or anonymous sources. *See United States v. Nolen*, 536 F.3d 834, 840 (8th Cir. 2008) (noting that unproven informants are less reliable than proven informants but more reliable than anonymous tipsters because they can be held accountable for false information.). Information from an unproven informant requires "some independent verification to establish reliability." *United States v. Kent*, 531 F.3d 642, 648 (8th Cir. 2008).

In this case, the officers had reasonable suspicion to stop the vehicle they believed to be driven by Ove. Based on the information given by the probationer who claimed to have purchased methamphetamine from Ove within the last 72 hours, the officers verified the location of a green SUV with a unique identifying sticker (the white grenade on the front driver's side panel) at a trailer park in St. Peter. Although the officers were not able to positively identify Ove during their observation of the trailer, they were able to confirm that the person they saw enter the vehicle was a white male with the same build as Ove. These facts—combined with Agent Johnson's previous knowledge of Ove as a suspected methamphetamine dealer and his independent knowledge of Ove's license being revoked—provided sufficient reasonable suspicion for the investigatory stop of the green SUV. *United States v. Smith*, 645 F.3d 998, 1002 (8th Cir. 2011) ("Reasonable, articulable suspicion is determined by the totality of the circumstances, taking into account an officer's deductions and rational inferences.") (internal quotations omitted).

**B.    The search of Ove's car was legal under the automobile exception.**

Ove argues that the search of his vehicle after his arrest was an unconstitutional inventory search and that probable cause did not exist to support the search without a warrant under the automobile exception. ECF No. 27, 10-16. The Government argues that the officers had probable

cause to conduct the search without a warrant under automobile exception or, in the alternative, that it was a legal inventory search. The Court finds that the officers had sufficient probable cause to conduct the search without a warrant under the automobile exception.

Law enforcement may search a vehicle without a warrant so long as they have probable cause to do so. *United States v. Mayo*, 627 F.3d 709, 713 (8th Cir. 2010). Probable cause exists when "given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000). In this case after they legally stopped the car and confirmed their suspicions that Ove was the driver, the officers had probable cause to believe that evidence of a crime would be found in the secret compartment behind the passenger airbag area described by their probationer informant. Prior to the search of the secret compartment, all of the information given by the probationer about Ove proved accurate, including (1) the type of car he drove, (2) where he lived and (3) the fact that he might have a gun on his person. It was reasonable, therefore, for the officers to believe that the information provided by the probationer about the secret compartment was accurate and that evidence of criminal activity was likely to be found within.

**C.    The residential search warrant was supported by probable cause.**

Ove also requests that the Court review the Government's search warrant for probable cause. "Judges may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a search warrant. . . ." *United States v. Alexander*, 574 F.3d 484, 490 (8th Cir. 2009) (quoting *United States v. Summage*, 481 F.3d 1075, 1078 (8th Cir. 2007)). The Court has reviewed the application and concludes that the information provided by Agent Johnson in the search warrant application was sufficient to establish probable cause for the search of trailer 89. In the search warrant application, Agent Johnson recounted the series of events that led

to Ove's arrest. Specifically, he noted that baggies of what he believed to be methamphetamine were seized from the car driven by Ove. He also indicated that it is common for persons who deal in controlled substances to keep records and other evidence of their illicit activity in their homes. Viewed as a whole, the information submitted in the search warrant application was sufficient to establish probable cause that additional evidence of illicit drug activity would be found in trailer 89. *E.g. U.S. v. Keele*, 589 F.3d 940, 944 (8th Cir. 2009) (holding probable cause existed for a residential search warrant after drug paraphernalia was recovered from the scene of an accident and the affiant stated that drug manufacturers often keep evidence of the contraband in their homes).[1]

### III. RECOMMENDATION

Based upon the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's motion to suppress the firearm found on his person and other evidence seized from his residence (ECF No. 13) should be **DENIED.**

---

[1] The Court notes that Agent Johnson's search warrant application indicates he searched Ove's vehicle *incident to his arrest* and found what he believed to be small amounts of methamphetamine, hypodermic needles and bullets in the "immediate area surrounding the drivers' seat." In contrast, Agent Johnson testified before this Court that he found the items seized from Ove's vehicle in the secret compartment behind the passenger-side airbag area. The Court has no need to resolve the inconsistency between Agent Johnson's affidavit and his testimony in court because the legal analysis of the vehicle search under the automobile exception remains the same regardless of where the seized items were located within the SUV. Moreover, as the Court has concluded the search of the vehicle was lawful under the automobile exception to the Fourth Amendment's warrant requirement, it is immaterial that Agent Johnson erroneously thought he was operating under a different legal doctrine.

DATED: October 4, 2013  *s/Franklin L. Noel*
FRANKLIN L. NOEL
United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **October 18, 2013**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **October 18, 2013** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.